UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, BOARD OF TRUSTEES, INTERNATIONAL TRAINING INSTITUTE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY, BOARD OF TRUSTEES, NATIONAL STABILIZATION AGREEMENT OF THE SHEET METAL INDUSTRY TRUST FUND BOARD OF TRUSTEES, SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST, and the BOARD OF TRUSTEES, NATIONAL ENERGY MANAGEMENT INSTITUTE COMMITTEE, <br><br> 3180 Fairview Park Dr., Suite 400 <br> Falls Church, VA <br><br> Plaintiffs, <br><br> v. <br><br> ATLANTIC FABRICATION & COATINGS, LLC <br><br> 72 Putnam Street <br> Paterson, NJ 07524 <br><br> Defendant. | CIVIL ACTION NO. 1:22-cv-1142 <br><br><br> **Additional Required Service under 29 U.S.C. § 1132(h) to:** <br><br> **U.S. Department of Labor** <br> **Attn: Assistant Solicitor** <br> **for Plan Benefits Security** <br> **200 Constitution Ave., N.W.** <br> **Washington, DC 20002** <br><br> **U.S. Department of Treasury** <br> **Attn: Secretary of the Treasury** <br> **1500 Pennsylvania Avenue, NW** <br> **Washington, D.C. 20220** |

**COMPLAINT**

Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT"), and the

1

National Energy Management Institute Committee ("NEMIC" and together with NPF, ITI, SASMI, and SMOHIT, referred to as "the Funds"), hereby complain as follows:

## Introduction

1. This is a civil action brought by employee benefit plans/trust funds or joint labor management organizations, and by the Trustees of the Funds, pursuant to Sections 502(a)(3), (d)(1), (g)(2), and 515 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185. The Funds seek a monetary judgment against Defendant awarding delinquent contributions, accrued interest, liquidated damages, audit fees, and attorneys' fees and costs, through the date of judgment, as well as those amounts that become due and owing through the date of judgment, pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the collective bargaining agreement, and the Trust Document governing the Funds.

## Jurisdiction and Venue

2. Jurisdiction is conferred upon this Court by Sections 502(e), (f) and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e) and (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(c), as the Plaintiff Funds are administered in this district with their principal place of business in Falls Church, Virginia.

4. Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this Complaint will be served upon the Secretary of United States Department of Labor and the

Secretary of the United States Department of the Treasury by certified mail on or about the date of filing.

## Parties

5. Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund ("NPF") is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the NPF are duly authorized Trustees whose duty it is to administer the NPF for the benefit of the participants and beneficiaries of the NPF. The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually or jointly referred to as "NPF" in this Complaint. The NPF is administered at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042.

6. Plaintiff Board of Trustees, International Training Institute of the Sheet Metal and Air Conditioning Industry ("ITI") is the collective name of the trustees of the International Training Institute of the Sheet Metal and Air Conditioning Industry. ITI is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing apprenticeship training and educational

benefits to eligible employees. ITI is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6). The Trustees of ITI are duly authorized Trustees whose duty it is to administer the plan for the benefit of the participants and beneficiaries of ITI. The Trustees of ITI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually and jointly referred to as "ITI" in this Complaint. ITI is administered at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042.

7. Plaintiff Board of Trustees, National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI") is the collective name of the trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund. SASMI is an employee welfare benefit plan within the meaning of Section 3(1), (3) of ERISA, 29 U.S.C. § 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing benefits to eligible employees. SASMI is, and at all times material herein, has been a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trustees of SASMI are duly authorized Trustees whose duty it is to administer SAMSI for the benefit of the participants and beneficiaries of SASMI. The trustees of SASMI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its trustees and plan are individually or jointly referred to as "SASMI" in this Complaint. SASMI is administered at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042.

8. Plaintiff Board of Trustees, Sheet Metal Occupational Health Institute Trust ("SMOHIT") is collectively the name of the trustees of the Sheet Metal Occupational Health Institute Trust. SMOHIT a jointly labor-management health and safety organization serving the sheet metal industry established under Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trust and its trustees are individually and jointly referred to as "SMOHIT" in this Complaint. SMOHIT is administered at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042.

9. Plaintiff Board of Trustees, National Energy Management Institute Committee ("NEMIC") is the collective name of the trustees of the National Energy Management Institute Committee. NEMIC is a labor management committee established pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that is funded by contributions under various collective bargaining agreements. The committee and its trustees are jointly and severally referred to as "NEMIC" in this Complaint. NEMIC is administered at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042.

10. The Trustees of the Plaintiff Funds bring this action in their collective names or, as necessary or appropriate, in the name of the respective trusts or plans, and their participants, and beneficiaries pursuant to Federal Rule of Civil Procedure 17.

11. At all times relevant to this action, Defendant Atlantic Fabrication & Coatings, LLC ("Atlantic Fabrication"), has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, Atlantic Fabrication has been incorporated in the state of New Jersey with a principal place of business at 72 Putnam Street, Paterson, NJ 07524.

**Factual Background**

12. At all times relevant to this action through November 1, 2020, Defendant employed employees represented for the purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Union (formerly known as the Sheet Metal Workers' International Association), Local Union No. 28 ("Local 28" or the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

13. At all times relevant to this action through November 1, 2020, Defendant was signatory to, and bound by, a collective bargaining agreement ("Agreement" or "CBA") with the Union. Pursuant to the Agreement, Defendant is obligated to submit monthly remittance reports and fringe benefit contributions to NPF, ITI, SASMI, SMOHIT, and NEMIC for all hours worked or paid on behalf of Defendant's covered employees within the jurisdiction of Local 28.

14. Pursuant to the Agreement, Defendant is obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, including any amendments thereto and policies and procedures adopted by the Boards of Trustees ("Trust Documents").

15. Article V, Section 3 of the governing Trust Agreement and Section V of NPF's Procedures for the Collection of Contributions both provide that the Funds may audit a contributing employer for the purposes of assuring the accuracy of reports and ensuring that such employer has remitted the appropriate amount of contributions to the Funds.

16. Article V, Section 6(a) of the governing Trust Agreement provides that a participating employer is liable for an Exit Contribution to the NPF if it: (i) ceases to have an obligation to contribute to the NPF, and (ii) had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute but was not required to pay withdrawal liability under Title IV of ERISA.

17. Article V, Section 6(b) of the governing Trust Agreement provides that "[b]y agreeing to contribute, continuing to contribute, or continuing to be obligated to contribute, to the Fund, each Employer agrees to pay an Exit Contribution in accordance with Section 6. The Employer's obligation to pay an Exit Contribution under this Section 6 is independent of the Employer's collective bargaining agreement and continues to apply after the termination of the collective bargaining agreement (notwithstanding any language to the contrary in the collective bargaining agreement)."

18. An employer meeting the conditions described in Article V, Section 6(a) of the Trust Agreement shall pay an Exit Contribution to the NPF after the expiration of its collective bargaining agreement if it ceases to have an obligation to contribute to the NPF as a result of such expiration, and it did not enter into a successor collective bargaining agreement requiring contributions to the NPF.

19. The amount of an employer's Exit Contribution is equal to the amount of the employer's contributions due for the 36-month period preceding the month in which the employer ceased to have an obligation to contribute to the NPF.

20. An Exit Contribution is required to be paid to the NPF no later than the 20th day of the month following the month in which NPF assessed the Exit Contribution by sending written demand for the payment of the employer's Exit Contribution.

21. Pursuant to Article V, Section 6(g) of the Trust Agreement, an Exit Contribution is a type of contribution that an employer is obligated to pay under the Trust Agreement. As such, an employer's failure to make an Exit Contribution constitutes a delinquency and is treated in the same manner as any other delinquent contribution.

22. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, the Agreement, the Trust Documents, and Section 301 of the LMRA, 29 U.S.C. § 185, if Defendant fails to timely submit the contractually required remittance reports and contribution payments, including Exit Contribution payments, and the Funds file a lawsuit to recover the unpaid contributions, Defendant is required to pay the following amounts to the Funds:

    a. Interest on the delinquent contributions at a rate of 0.0233% per day, compounded daily;

    b. Liquidated damages equal to the greater of: fifty dollars ($50.00) or ten percent (10%) of the contributions due for each month of contributions that the Company fails to pay within 30 days after the due date, but pays before any lawsuit is filed;

    c. Liquidated damages equal to the greater of interest on the delinquent contributions at the above rate or liquidated damages equal to twenty percent (20%) of the delinquent contributions owed upon commencement of litigation; and

    d. The attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts, including the attorneys' fees and costs in this action.

23. For the months of July 2016 through March 2019, a payroll audit of Defendant shows that Defendant violated the terms of the CBA by subcontracting out covered work and as a result owes contributions to the Funds under the Agreement, Trust Documents, Section 515 of ERISA, 29 U.S.C. § 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

24. Additionally, Atlantic Fabrication ceased to have an obligation to contribute to the NPF and had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute as of November 1, 2020. Atlantic Fabrication was not required to pay

withdrawal liability under Title IV of ERISA. Therefore, Atlantic Fabrication owes an Exit Contribution pursuant to Article V, Section 6(a) of the governing Trust Agreement.

### Count I
*Amounts Owed Pursuant to Audit*

25. Plaintiffs reallege and incorporate Paragraphs 1 through 27.

26. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

27. Defendant is obligated, under the terms of the Agreement, to provide contributions to the Funds for the performance of work covered by the CBA. In addition, Article II, Section 2 of the CBA expressly prohibits Defendant from subcontracting covered work. Defendant has failed and refused to fulfill its contractual obligations by subcontracting covered work as demonstrated by a payroll audit conducted on Defendant by the Funds for the period of July 2016 through March 2019.

28. A plan may seek damages for an employer's violation of a subcontracting provision. *See Walsh v. Schlecht*, 429 U.S. 401, 407 (1977). In such circumstances, the funds calculate the required payments due from the delinquent employer measured by the hours worked by the subcontractor's employees, regardless of whether the subcontractor's employees benefit from such payments. *See id.* at 407; *see also Sheet Metal Workers' Health & Welfare Fund of N.C. v. Stromberg Metal Works, Inc.,* No. 5:21-CV-101-BO, 2021 BL 362052, at *10 (E.D.N.C. Sept. 22, 2021). As such, Defendant owes contributions, interest, and liquidated damages to the Funds. While contributions remain unpaid, interest continues to accrue on these delinquent contributions and audit fees have been assessed pursuant to the Funds' governing documents.

29. Specifically, the audit revealed that Atlantic Fabrication owes contributions in the amount of $195,516.19 for the period of July 2016 through March 2019. In addition to the

contribution amounts found due, Atlantic Fabrication owes $72,778.45 in interest (calculated through October 11, 2022), $72,778.45 in liquidated damages, and $2,633.75 in audit testing fees. In total, as a result of the audit, Defendant owes $343,706.84 to the Funds for unpaid contributions, interest, liquidated damages, and testing fees. Interest continues to accrue until the date of payment.

30. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g), Plaintiffs are entitled to recover all costs of this action from Defendant, including reasonable attorneys' fees and court costs.

31. Prior to commencing this lawsuit, the Funds sent letters and attempted to directly contact Defendant to obtain the outstanding contributions from Defendant Despite these efforts, Defendant has not resolved its delinquency. There is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the Funds, and pay the delinquent and unpaid contributions, liquidated damages, interest, and testing fees due on the delinquent and unpaid contributions.

32. Defendant's continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the Funds, endangered the eligibility of covered members' pension benefits, and other harm. Defendant's failure and refusal to comply with its obligations creates an atmosphere in the industry that encourages other employers to do the same.

### Count II
*NPF's Claim for Exit Contribution*

33. Plaintiff NPF realleges and incorporate Paragraphs 1 through 32.

34. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

35. Defendant is obligated under the terms of the CBA, Trust Agreement, and Section 515 of ERISA to pay an Exit Contribution to the NPF if it (i) ceases to have an obligation to contribute to the NPF, and (ii) had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute, but was not required to pay withdrawal liability under Title IV of ERISA.

36. Pursuant to Article V, Section 6 of the Trust Agreement, Defendant's obligation is independent of the CBA and continues to apply after its termination notwithstanding any language to the contrary.

37. As of November 1, 2020, Defendant ceased to have an obligation to contribute to the NPF and continued to perform work in the jurisdiction of the Agreement of the type for which contributions were previously required. This constituted a withdrawal under Title IV of ERISA, but Defendant was not required to pay withdrawal liability under ERISA's *de minimis* rule.

38. On December 30, 2020, the NPF notified Defendant by letter that an Exit Contribution was assessed in the amount of $95,243.87. The Exit Contribution was later revised to reflect the additional contributions due resulting from the payroll audit. The Exit Contributions thus totals $165,031.95.

39. To date, Atlantic Fabrication has failed to pay any portion of the Exit Contribution due to the NPF, despite its obligation to do so under the CBA, the Trust Agreement, and Section 515 of ERISA, 29 U.S.C. § 1145.

40. Pursuant to Article V, Section 6(g) of the Trust Agreement, an Exit Contribution is a type of contribution that an employer is obligated to pay under the Trust Agreement. As such, an employer's failure to make an Exit Contribution constitutes a delinquency and is treated in the same manner as any other delinquent contribution. Accordingly, Defendant owes interest on the

unpaid Exit Contribution in the amount of $30,112.40 (through October 10, 2022) and liquidated damages in the amount of $33,006.39. Defendant owes a total of $228,160.74 due to its failure to pay the owed Exit Contribution. While the Exit Contribution remains unpaid, interest continues to accrue on the delinquent Exit Contribution.

41. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g) and the Trust Agreement, Plaintiffs are entitled to recover all costs of this action from Defendant, including reasonable attorneys' fees and court costs.

42. Despite efforts by the NPF to obtain the outstanding Exit Contribution, Defendant has not satisfied its obligation to pay the Exit Contribution. There is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the NPF, and pay the delinquent Exit Contribution and liquidated damages and interest due on the delinquent Exit Contribution.

43. Defendant's continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the NPF, endangered the eligibility of covered members' pension benefits, and other harm. Defendant's failure and refusal to comply with its obligations creates an atmosphere in the industry that encourages other employers to do the same.

**WHEREFORE**, Plaintiffs request a judgment against Defendant for all amounts and reports due to the Funds as follows:

1. Declare that Defendant violated the subcontracting provision of the CBA and owes contributions to the Funds pursuant to the Agreement;

2. Declare that Defendant is delinquent in remitting the owed Exit Contribution to the NPF pursuant to the CBA and Trust Agreement;

3. Award Plaintiffs on behalf of the Funds a judgment for Defendant's delinquent contributions found to be due by the audit for the period of July 2016 through March 2019 in the amount of $195,516.19;

4. Enter judgment against Defendant for interest on all delinquent contributions owed pursuant to the audit at a rate of 0.0233% per day, compounded daily, from the date due until the date paid or the date of the judgment, in the amount of at least $72,778.45.

5. Enter judgment against Defendant for liquidated damages in an amount equal to the greater of interest on the delinquent contributions calculated at the above rate, or 20% of the delinquent contributions, in the amount of at least $72,778.45;

6. Enter judgment against Defendant for audit testing fees in the amount of $2,633.75;

7. Award NPF a judgment for Defendant's delinquent Exit Contribution in the amount of $165,031.95;

8. Enter judgment against Defendant for interest on the Exit Contribution at a rate of 0.0233% per day, compounded daily, from the date due until the date paid or the date of the judgment in the amount of at least $30,122.40;

9. Enter judgment against Defendant for liquidated damages in an amount equal to the greater of interest on the Exit Contribution calculated at the above rate, or 20% of the Exit Contribution in the amount of at least $33,006.39;

10. Retain jurisdiction to enter judgment against Defendant for any additional amounts that may become due and owing after the outstanding reports are provided and that may become due and owing as a result of any future audit conducted;

11. Enter judgment for all attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts as provided by Section 502(g) of ERISA; and

12.    Award such other relief as the Court deems just and proper.


                              Respectfully Submitted,


                              _____/s/ John R. Mooney_____
                              John R. Mooney (Bar No. 22212)
                              Mooney, Green, Saindon, Murphy & Welch, P.C.
                              1920 L Street, NW, Suite 400
                              Washington, D.C. 20036
                              (202) 783-0010
                              (202) 783-6088 facsimile
                              dbardes@mooneygreen.com
                              *Counsel for Plaintiff Funds*

Dated: October 12, 2022

## CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)

I hereby certify that on this 12th day of October, 2022, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, AUDIT TESTING FEES, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

                                                                              /s/ John R. Mooney
                                                                               John R. Mooney